UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDDIE ERVIN #241696,

        Petitioner,

v.

HUGH WOLFENBARGER,

        Respondent.

_____/

CASE NO. 2:06-CV-10004
HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE
HONORABLE VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

FREDDIE ERVIN #241696
MACOMB CORRECTIONAL FACILITY
24625 26 MILE ROAD
NEW HAVEN MI 48048

MICHAEL A. COX
ATTORNEY GENERAL

Laura A. Cook (P44718)
Assistant Attorney General
Attorney for Respondent
Criminal Appellate Division
P.O. Box 30217
Lansing, MI 48909
 (517) 373-4875

**Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus**

**Statement of the Case**

    Following a jury trial in the Wayne Circuit Court, Petitioner Freddie Ervin was convicted

of first-degree murder, felony firearm, and felon in possession of a firearm.  Petitioner was

sentenced to life in prison for the murder conviction, 2 years in prison for the felony-firearm

conviction, and 40-to-60 months in prison for the felon in possession conviction.  Petitioner filed

an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.      Defendant was denied due process and his right to a properly instructed jury, as the trial court's instructions on the differences between first and second degree murder were erroneous, confusing, and misleading.

II.     Defendant was denied a fair trial when irrelevant bad act evidence, concerning allegations of past instances of armed robbery and murder, was admitted against him contrary to MRE 404(b), where the prosecutor failed to show that its probative value to a material issue outweighed its inherently prejudicial character.

III.    Defendant was denied his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments, as the trial record established that his trial attorney failed to object to, or otherwise seek suppression of, the prosecutor's introduction of bad act evidence concerning the Defendants' alleged previous armed robbery and multiple murder activities, and also failed to request an appropriate jury instruction on how the jury should utilize this evidence.

On May 11, 2004, the Michigan Court of Appeals affirmed Petitioner's convictions.

(*People v Ervin*, Michigan Court of Appeals No. 245255)

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that were asserted in the Michigan Court of Appeals.  On December 29, 2004, the Michigan Supreme Court denied leave because the Court was not persuaded that the questions presented should be reviewed.  (*People v Ervin*, Michigan Supreme Court No. 126460).

On or about January 3, 2006, Petitioner filed a petition for a writ of habeas corpus with this Court.  On June 6, 2006, however, Petitioner filed a motion to stay the case in order for him to return to State court to exhaust certain claims.  On June 27, 2006, this Court granted Petitioner's motion.

On or about August 18, 2006, Petitioner filed a motion for relief from judgment in the trial court, pursuant to Michigan Court Rules (MCR) 6.500 et seq, alleging that a) trial counsel was ineffective for going to trial without complete discovery materials, and failing to file a motion to compel the prosecution to comply with the discovery order; b) appellate counsel was

ineffective for failing to assert claim "a" on direct appeal; and c) Petitioner was entitled to a new trial because he was actually innocent and his conviction was obtained through the use of perjured testimony.  On February 21, 2007, the trial court denied Petitioner's motion for relief from judgment.

Petitioner appealed the trial court's decision to the Michigan Court of Appeals, and asserted the following claims[1]:

   I.    The trial court's decision denying relief is contrary to firmly established federal law and is clearly erroneous and will cause manifest injustice and the opinion of the trial court conflicts with decisions is this court and the Supreme Court.

   II.   Defendant was denied effective assistance of trial counsel.

   III.  Defendant was denied ineffective (sic) assistance of appellate counsel.

   IV.   The prosecution failure to comply with the discovery order and suppressed evidence of other suspects in the crime deprived Defendant of his constitutional right to due process.

   V.    Defendant is innocent.

On October 23, 2007, the Court of Appeals denied Petitioner's delayed application for leave to appeal for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).  (*People v Ervin*, Michigan Court of Appeals No. 277787).  On May 27, 2008, the Michigan Supreme Court denied Petitioner's application for leave to appeal because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  (*People v Ervin*, Michigan Supreme Court No. 135266 & (20)).

In conformance with this Court's June 27, 2006 order granting the stay, Petitioner timely filed a request to reopen the habeas case, and to amend his habeas petition.  On July 28, 2008,

---

[1] Although Petitioner's application for leave to appeal to the Michigan Court of Appeals does not number each of his arguments, Respondent attempts to do so here in order for clarity.

this Court issued an order reopening the case and granting Petitioner's request to amend his

petition.  Petitioner's Amended Petition asserts the following habeas claims[2]:

> I.   Petitioner, who is actually innocent, convictions must be overturned and a new trial granted, where the newly discovered evidence of witness Timothy Murrell reveals that he committed perjury and fabricated his entire testimony in order to receive a lighter sentence on his criminal sexual conduct conviction, along with the affidavit of Dirlain D. Moore swearing that (his cousin), witness Jamal Jackson confessed to him of committing the murder Petitioner now stands convicted of, thus denying Petitioner his constitutional right to a fair trial and insufficient evidence to convict Petitioner.

> II.  Petitioner was denied his constitutional right to the effective assistance of trial counsel by counsel going to trial without discovery material, and failure to file a motion to compel against the prosecutor for failure to comply with the discovery order, that required the prosecution to provide defense with police reports, which contained potentially exculpatory impeachment information, leaving Petitioner without a proper defense afforded by the Sixth Amendment of the United States Constitution.

>> A.   Attorney failed to investigate and obtain discovery material.

>> B.   Trial counsel was ineffective for failure to file, object, or otherwise seek suppression of the prosecutor's introduction of bad acts concerning Petitioner's alleged armed robbery and multiple murder activities as alleged by jailhouse informant Murrell, and failed to request an appropriate jury instruction on how the jury should utilize this evidence.

> III. Prosecution suppression of favorable discovery material deprived Petitioner of his constitutional right to due process, a fair trial and adequate defense.

> IV.  Petitioner was denied his constitutional right to a fair trial when irrelevant bad act evidence, concerning allegations of past instances of armed robbery and murder, was admitted against him, where the prosecutor

---

[2] Petitioner's Amended Petition lists two Habeas Claim "V" arguments.  For purposes of clarity, Respondent assumes that the first "Habeas Claim V" was actually intended to be labeled "IV" given that there is no Habeas Claim IV actually listed.  In addition, Petitioner lists Habeas Claim II and then a claim "II-A" (Amended Petition, p 16).  Respondent instead lists Habeas Claim II "A" and "B," with Habeas Claim II (B) representing Petitioner's Habeas Claim "II-A" as cited in his Petition.

failed to show its probative value to material issues outweighed its inherently prejudicial character.

V.    Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel on appeal of right, by failing to raise the meritorious claim herein of Petitioner ineffectiveness of trial counsel for failure to obtain discovery material, which was integral to Petitioner's case and may have resulted in reversal of Petitioner's conviction and the granting of a new trial.

Respondent now answers the petition and requests that it be denied for the reasons stated in the Argument section herein.  In addition, Respondent opposes any request for discovery, evidentiary hearings, bond, oral argument, or any other relief.

## Statement of Facts

In the prosecutor's brief to the Michigan Court of Appeals, the facts of this case are

outlined as follows:

Roselind Murray, who was considered by some to be defendant's girlfriend, was at Yahoo's Lounge on January 13, 2002, along with defendant, Jamal Jackson, and the victim.  She was friends with all three men, and she recalled that had asked defendant for a ride home.  There was an argument described as almost a physical confrontation between someone named James and the victim, with the result that six guys, including defendant, picked the victim up off of the floor, and put him out of the bar. Jackson and defendant left the bar with the victim, and they did not return. Murray remained in the bar. She said that the victim was beating on the door, asking to be readmitted, and threatening to kill everyone inside the bar, and to "spray" the bar. At the same time, Willie Sellers was outside the bar, and witnessed the victim being put out. The barmaid, Karen Sheppard, phoned 911 over the perceived attempt to break into the bar. Sellers and a friend walked around the side of the building because they thought the victim was calling the police, leaving him with defendant and a smaller guy. Both he and Sheppard heard the gunshots. Sheppard called 911 a second time. Murray denied hearing any gunshots, but admitted that she moved to the back when a woman said "[d]on't you all go out there; they're shooting." About ten minutes later, defendant knocked on the glass, and told the owner to let Murray out. Murray got into defendant's truck that was parked on the sidewalk.  (Trial Transcript 6/4/02, 73-84, 102-112, 114-122, 130. 133-140. 6/5/02 (A), 13-25).

Defendant directed Murray's attention to the victim, who was lying on the ground, after Jackson drove away and then returned to the scene. Murray tried to get out of the car to help the victim after Jackson had gone over to the victim and reported back that the victim was still breathing. Defendant did not let her yet out, saying "[y]ou don't need to see this. You don't need to be a witness to a murder." (TT 6/4/02, 84-92, 95).

Jamal Jackson described the evening at the Yahoo Lounge, including the argument and the victim's ejection from the bar, and he testified that when he and defendant left, defendant told him to start up the truck and keep it running. While Jackson walked to the truck alone, he heard the victim beating on the door. As soon as Jackson started the truck, he heard a lot of gunshots. Defendant suddenly appeared at the door, trying to get into the truck. Defendant was breathing real hard, and had a gun in his hand. Jackson noticed that the gun slide was open, and he saw no bullets remaining in the gun. Defendant got into the truck on the passenger side. Defendant told Jackson to drive up to the bar because he had to get a friend out. They got Murray and drove off. Defendant told him to circle back. Defendant said to get out of the truck. Defendant asked Jackson if the

victim was still breathing. Defendant said nothing about shooting the victim, but did tell him not to talk to the police about the incident. (TT 6/5/02 (A), 36-49, 53)

Hayden Dannug, a forensic chemist with the Detroit Police Department, tested defendant's black leather jacket for gunshot residue. He detected gunshot residue on the right sleeve cuff, right outer pocket, and the left breast pocket. (TT 6/5/02 (B), 25-26)

Defendant spoke to Timothy Murrell on a number of occasions. Defendant admitted wearing a black leather Pelle jacket when he shot the victim six times, and that he gave the murder weapon to his wife. The gun, a .40 caliber Glock, was in the house. Defendant also said the he was going to tell his younger sister to tell Jackson not to show up for trial. (TT 6/5/02 (B), 34-43, 51)

[Michigan Court of Appeals Docket No. 245255, Prosecutor's Brief, pp 20-22]

Additional pertinent facts of this case are also discussed and contained in the Argument section herein.

**Argument**

I.    **Petitioner failed to seek direct review in the Michigan appellate courts with respect to Habeas Claims I, II (A), III, and V.  As a result, the Michigan courts denied leave to appeal these claims—raised in his motion for relief from judgment—on the basis of MCR 6.508(D).  Accordingly, these claims are procedurally defaulted and not subject to habeas review where Petitioner has failed to demonstrate that appellate counsel's failure to assert the claims is sufficient cause to excuse the default.**

Although Petitioner presented the issues asserted in Habeas Claims I, II (A), III, and V in his motion for relief from judgment and subsequent appeal, he failed to do so in his appeal of right.  As a result, the trial court and the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal the claims in Petitioner's motion for relief from judgment on the basis of MCR 6.508(D).  Subchapter 6.500 of the Michigan Court Rules (MCR) governs motions for relief from judgment in criminal cases in Michigan and provides the exclusive procedure for challenging a conviction or sentence after the conclusion of the defendant's direct appeal of right.  MCR 6.508(D) states as follows:

> (D)    Entitlement to Relief.  The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion
>
> > (1)    seeks relief from a judgment of conviction and sentence that still is subject to change on appeal pursuant to subchapter 7.200 or subchapter 7.300;
> >
> > (2)    alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
> >
> > (3)    alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates;
> >
> > > (a)    good cause for failure to raise such grounds on appeal or in the prior motion, and

(b)    actual prejudice from the alleged irregularities that support the claim for relief.  As used in this subrule, "actual prejudice" means that,

(i)    in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal.

(ii)    in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

(iii)    in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;

(iv)    in the case of a challenge to the sentence, the sentence is invalid.

It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims.[3]  In *Burroughs v Makowski,*[4] the Court considered the form order used by the State appellate courts here and found that it presented a sufficient explanation that the ruling was based on the failure to comply with a State procedural rule.[5] Where a State court denies relief on independent and adequate State procedural grounds, as the Supreme Court did here, a prisoner may only obtain habeas review of such claims if he can

---

[3] *Howard v Bouchard*, 405 F3d 459, 477 (CA 6, 2005).
[4] *Burroughs v Makowski,* 282 F3d 410, 413-414 (CA 6, 2002)
[5] See also *McFarland v Yukins,* 356 F3d 688, 697-698 (CA 6, 2004); *Simpson v Jones*, 238 F3d 399, 407-408 (CA 6, 2000); *Gonzales v Elo*, 233 F3d 348 (CA 6, 2000); *Luberda v Trippett*, 211 F3d 1004 (CA 6, 2000).

establish "cause and prejudice," or demonstrate that the failure to review the claims would result in a "fundamental miscarriage of justice."[6]

In order to establish cause for a procedural default, a petitioner must establish that some objective factor external to his defense prevented him from complying with the State procedural rule.[7]  Although in Habeas Claim V Petitioner asserts that appellate counsel did not provide effective assistance given the failure to raise the additional issues in the appeal of right, this argument does not constitute sufficient cause to excuse the procedural default.  In order for attorney error to constitute cause, a petitioner must show that his counsel's representation was unreasonable and that, but for counsel's alleged errors, the results of the proceeding would have been different.[8]  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[9]

Here, the issues appellate counsel *did* raise on direct appeal were well argued and prompted the Michigan Court of Appeals to issue a detailed opinion.  As the Supreme Court stated in *Jones v Barnes*, "[a] brief that raises every colorable issue runs the risk of burying good arguments – those that, in the words of the great advocate John W. Davis, 'go for the jugular' – in a verbal mound made up of strong and weak contentions."[10]  Petitioner is required to show that his appellate attorney was so thoroughly ineffective that defeat was "snatched from the jaws of victory."[11]  Petitioner is unable to demonstrate that a) appellate counsel was unreasonable in

---

[6] *Strickler v Greene*, 527 US 263 (1999).
[7] *Murray v Carrier*, 477 US 478, 486-488 (1986).
[8] *Strickland*, 466 US at 687-691, 694 (1984).
[9] *Strickland*, 466 US at 689.
[10] *Jones v Barnes*, 463 US 745, 753 (1983).
[11] *United States v Morrow*, 977 F2d 222, 229, (CA 6, 1992) (*en banc) cert den,* 508 US 975 (1993); *West v Seabold*, 73 F 3d 81, 94 (CA 6, 1996).

failing to assert the additional claims in the appeal of right; or b) had counsel asserted the additional claims, the results on appeal would have been different.

A.    Habeas Claim I

Habeas Claim I alleges that Petitioner's convictions must be overturned because newly-discovered evidence reveals that two witnesses—jailhouse informant Timothy Murrell and witness Jamal Jackson perjured—themselves at trial.  Petitioner presents "newly-discovered evidence" in the form of an affidavit from Murrell wherein he indicates he lied at trial, and an affidavit from a cousin of Jackson who alleges Jackson told him he was the one who killed the victim.  In order to prevail on a new trial motion, a defendant generally must demonstrate that (1) the evidence was discovered following trial; (2) the evidence could not have been previously discovered through the exercise of due diligence; and (3) the evidence would likely produce an acquittal.[12]  But when the newly discovered evidence is designed to demonstrate perjury on the part of government witnesses, the defendant must show that testimony in question was material, false, and known to be false by the prosecution.[13]  The burden is on the petitioner to show that the testimony was false.[14]

Here, Petitioner cannot meet the burden of establishing that the prosecution presented testimony it *knew to be false* at the time of trial.  With respect to Jamal Jackson's testimony, the only "evidence" Petitioner presents to indicate Jackson perjured himself is a hearsay statement Jackson allegedly made to his cousin, who *after* Petitioner's conviction prepared an affidavit indicating his cousin Jackson told him he was the killer.  Petitioner has not sufficiently demonstrated Jackson lied at trial, much less that the prosecutor knew the testimony was false.

---

[12] *United States v Barlow*, 693 F2d 954, 966 (CA 6, 1982).
[13] *United States v Farley*, 2 F3d 645, 655 (CA 6, 1993).
[14] *United States v Griley*, 814 F2d 967, 971 (CA 4, 1987).

With respect to Timothy Murrell's testimony at trial, Murrell now claims, in his post-conviction affidvit, that he testified untruthfully at trial.  Even if Murrell's recanting affidavit is taken as true—a point Respondent does not concede—he is not indicating that the prosecution was aware he was lying, but presented his testimony nonetheless.  Petitioner has provided no basis upon which it can be shown that the prosecution knew Murrell was lying when he testified that Petitioner told him in jail that he killed the victim.  Murrell's affidavit indicates that *he* approached the Detroit Police with information about Petitioner's case, as opposed to the State seeking him out.  Moreover, Murrell's affidavit *specifically states* that he "lied to the Court, the Homicide Investigators, the Jury, *and the prosecutor* in this case."  (Petitioner's Exhibit A, Timothy Murrell Affidavit, paragraph 7)  Murrell's own "recantation" makes clear the prosecution was unaware he presented false testimony at trial.

With respect to the recantation itself, Murrell alleges he obtained the information he needed to testify falsely by reading the preliminary examination transcript in Petitioner's cell, and that Petitioner never spoke to him about the crime.  Although some of the testimony Murrell provided at trial can be found in the prelim transcript, other information, such as Murrell's testimony that Petitioner told him he was wearing a *black* leather Pelle coat, was not included in that transcript.  Indeed, the lone witness presented at the prelim indicated Petitioner was wearing a *brown* leather jacket.  Yet Murrell did not testify about a brown jacket, but rather a black one.  And at trial, expert testimony established that when Petitioner's *black* leather Pelle Pelle jacket was tested for gunshot residue, it tested positive on the "right sleeve cuff, on the right outer pocket . . . and then the left breast pocket."  (Trial Transcript, 6/5/02 (B), pp 26, 69)  Murrell would have had no way of knowing that Petitioner was wearing a black leather Pelle jacket on the night in question unless Petitioner himself told him so, as such information was not contained

in the exam transcript, and the lab report regarding the description of the jacket Petitioner was wearing, and the testing of it, was not provided to the prosecution or defense until approximately one week prior to trial.  (TT 6/5/02 (B), pp 70-71)

The fact that a witness contradicts himself or changes his story does not establish perjury.[15]  Petitioner has not established that the prosecution knew or should have known that Murrell's testimony was supposedly false.  And recanting affidavits of witnesses are viewed with extreme suspicion.[16]  Moreover, even if Murrell's testimony at trial was false, Petitioner cannot show that but for that testimony, he would have been acquitted.  At trial, defense counsel solidly attacked Murrell's testimony by presenting witnesses to contradict some of the details of Murrell's claims.  For example, counsel presented a secretary from the Wayne County Jail to testify regarding a list of visitors Petitioner would have had on specific dates in question.  (TT 6/6/02, pp 4-7)  At trial, Murrell claimed that Petitioner's sister had visited Petitioner at the jail, but through the secretary, trial counsel was able to establish there was no such visit.  Additionally, to contradict Murrell's testimony that he had never looked in Petitioner's cell and had never seen any papers in there (TT 6/5/02 (B), p 56), trial counsel called two other inmates who testified they saw Murrell in Petitioner's cell.  Dwight Smith testified that Petitioner's cell and desk were always neat and organized, but on one occasion, when he saw Murrell alone in Petitioner's cell, papers were scattered all over Petitioner's desk.  (TT 6/6/02, pp 22-23)  Eric Stewart, who was with Dwight Smith and observed Murrell in Petitioner's cell, testified that in addition to seeing Murrell in Petitioner's cell that day, he also saw Murrell there on several other occasions.  (TT 6/6/02, pp 39-40)  Finally, trial counsel also called Petitioner's wife to testify in

---

[15] *United States v Wolny*, 133 F3d 758, 763 (CA 10, 1998); *United States v Lebon*, 4 F3d 1, 2 (CA 1, 1993).
[16] *United States v Willis*, 257 F3d 636, 645 (CA 6, 2001); *United States v Chambers*, 944 F2d 1253, 1264 (CA 6, 1991).

order to contradict Murrell's testimony that Petitioner told him his wife had found out Petitioner impregnated another woman.  (TT 6/6/02, pp 8-19).

Murrell's jailhouse-informant testimony was impeached by defense counsel at trial.  It is possible that as a result of the testimony of the other witnesses presented by the defense, Murrell's claim that Petitioner confessed to the crime was disregarded by the jury.  In any case, separate from Murrell's testimony, the prosecution presented sufficient evidence to convict Petitioner.  Several witnesses placed Petitioner at the bar just before the victim was shot.  And Rosalind Murray, a friend of Petitioner's stated that after the victim was kicked out of the bar and there was some shooting outside, she did not see Petitioner or Jamal Jackson in the bar at the time the shooting was taking place.  (TT 6/4/02, p 81)  Ms. Murray also testified that approximately 10 minutes later later, Petitioner knocked on the door/glass of the bar and asked the owner to let Murray come outside.  When she went outside, Petitioner was standing there and Jackson was behind the wheel of a truck.  Petitioner jumped in the back seat of the truck, and Murray sat in the front.  After Murray was in the car, Petitioner asked her "do you see that nigger on the ground?"  (TT 6/4/02, pp 82-83)  Jackson was driving the car away from the scene, but Murray asked them to go back to the scene so she could see what Petitioner was talking about.  (TT 6/4/02, p 88)  When they got there, she saw the victim on the ground, and Petitioner and Jackson got out of the truck.  Because she was a friend of the victim's, Murray tried to get out of the truck to help him.  Petitioner, however, would not let her get out of the car.  He told her instead, "you don't need to see this.  You don't need to be a witness to a murder."  (TT 6/4/02, pp 90-92)  When Jackson said "he breathing, he breathing," Murray wanted to get out of the truck and help the victim because, as a nurse's assistant with CPR training, she felt she could render some aid to him. But Murray was not able to get out of the vehicle.  (TT 6/4/02, p 95)

Jamal Jackson, who accompanied Petitioner to the bar, testified that when he and Petitioner left the bar about five minutes after the victim was kicked out of the bar, Petitioner told him to go and start up Petitioner's vehicle.  The victim was lingering outside of the bar as Jackson walked to go and start the vehicle.  As Jackson sat behind the wheel and started the car, he heard several gunshots and ducked.  Although Jackson did not see any shooting, he testified that when the shooting ended and he sat up a short time later, Petitioner was at the vehicle, breathing hard and holding a gun in his hand.  Jackson added that the slide on the weapon was open, and that there were no bullets left in the weapon.  (TT 6/5/02 (A), pp 39-44)  Crime lab witness Paul Hartzell testified that 10 shell casings were found at the scene of the shooting, and all were fired from the same weapon.  He also testified that when the slide is open on some weapons, it means that the weapon has been emptied.  (TT 6/5/02 (B), pp 10-11)

Because Petitioner has failed to show that Murrell's and Jackson's testimony at trial was false, or that the prosecution knowingly presented false testimony, he cannot obtain relief for Habeas Claim I.  This is particularly true where, even if he could successfully argue that newly-discovered evidence establishes there was false testimony at trial, he cannot show that the outcome would have been different.

B.    Habeas Claims II (A), III, and V

Habeas Claim III alleges that the prosecution suppressed favorable discovery material and thereby deprived Petitioner of his right to due process.  Habeas Claim II (A) alleges that trial counsel was ineffective for failing to obtain full discovery from the prosecutor, and Habeas Claim V alleges appellate counsel was ineffective for failing to assert claims II (A) and III on direct review.  Petitioner alleges there were six portions of discovery that were suppressed by the

prosecution in violation of *Brady v Maryland*.[17]   The six items are alleged to be: 1) Jamal Jackson's first statement to police, wherein he indicates he saw two men near the body of the victim, and where said report indicates Jackson was arrested as the first suspect of the murder, and no mention is made of Petitioner; 2) Witness James Herbert's first statement to police, describing a man meeting Jackson's description standing near the victim after he was shot; 3) forensic lab reports of alleged gunshot residue on Petitioner's jacket; 4) criminal convictions and backgrounds for all testifying witnesses, and the identity of the alleged two men (potential witnesses or killers) Jackson claims to have threatened the victim and then standing near the victim's body; 5) plea negotiations between the prosecution and jailhouse informant Murrell regarding promises made; and 6) Internal Affairs investigation report regarding and statements issued by off-duty Officer James Herbert.

In *Jamison v Collins*,[18] the Sixth Circuit Court of Appeals set forth the elements that must be established to show a *Brady* violation:[19]

> [*Brady v Maryland*] . . . and its progeny held that due process is violated when the prosecution suppresses evidence favorable to the accused in a criminal case if the evidence is material to guilt or to sentencing.  *Id*. at 87.  This duty extends to information in the possession of the law enforcement agency investigating the offense.  *Kyles v Whitley*, 514 U.S. 419, 437-38, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995).

> A *Brady* violation consists of three elements, as recently set forth by *Strickler v Greene*, 527 U.S. 263, 144 L. Ed. 2d 286, 119 S. Ct. 1936 (1999).  [Petitioner] must establish (1) that the evidence was favorable to him, (2) that it was suppressed (whether intentionally or not) by the government, and (3) that prejudice ensued. Id. at 281-82.  The prejudice (or materiality) element of a *Brady* violation is established if there is a reasonable probability of a different outcome of the trial had the *Brady* material been available.

---

[17] *Brady v Maryland*, 373 US 83 (1963).
[18] *Jamison v Collins*, 291 F3d 380, 384-385 (CA 6, 2002).
[19] *Jamison*, 291 F3d at 384-385.

Thus, *Brady* requires that a petitioner establish that the prosecution suppressed *favorable* evidence to the defense, and that prejudice ensued such that there is a reasonable probability that a different outcome would have occurred at trial had the material been available. Here, Petitioner cannot demonstrate either point.

With respect to Jamal Jackson's first statement to police—where he indicated he saw two men standing near the victim's body after the shooting, and made no mention of Petitioner having had a gun after the shooting—the defense was aware of the content of Jackson's first statement prior to trial. At Petitioner's preliminary exam, defense counsel specifically questioned Jackson about the fact that he had been arrested and questioned by the police on January 17, 2002, and in his statement to police had failed to mention anything about Petitioner having a gun or being involved in the shooting. (Preliminary Examination Transcript, 2/6/02, pp 37-39) Jackson was shown a copy at the prelim of the statement he gave to police on January 17 as well as a copy of the statement he gave to police on January 19, 2002, wherein he then indicated Petitioner had a gun right after the shooting occurred. And at trial, Jackson testified and was cross-examined regarding the fact that he observed two people near the victim's body and that the two ran away as he and Petitioner drove up to the scene. (TT 6/5/02 (A), p 55) Petitioner has failed to show that the prosecution suppressed Jackson's first statement to police where the defense was clearly aware of the contents of that statement. To the extent Petitioner also argues that the prosecution suppressed information regarding the two men Jackson observed near the victim's body, he has failed to show that the prosecution had such information. Petitioner's argument amounts to mere accusation and speculation in this regard, as he only *suggests* that the prosecutor suppressed "the names of the two men Jackson claimed in his first statement that he alleged to have seen standing over the police." Petitioner does not allege, nor

can he show, that Jackson knew the names of the two men, or that the police or prosecution were ever able to identify them either.

With respect to off-duty Officer James Herbert's first statement to police—wherein he said that a man meeting Jackson's description was standing near the fallen victim—and the Internal Affairs report regarding Herbert's conduct on the night of the victim's death, Petitioner again fails to show that the prosecution withheld exculpatory evidence. Petitioner's claim that Herbert's exculpatory statement indicating a man fitting Jackson's describing was standing over the victim is without merit where such information was clearly known to the defense, and Herbert was questioned at trial regarding same. (TT 6/5/02 (A), pp 21-22) Moreover, defense counsel was clearly aware there had been two statements to the police because during Herbert's testimony, counsel referenced a January 14, 2002 "second statement" (TT 6/5/02 (A), p 24) and actually showed Herbert a January 13, 2002 statement Herbert had made to police. (TT 6/5/02 (A), p 27) And defense counsel specifically stated to Herbert on the record that "you actually gave several statements to the police; is that correct?" To which Herbert responded "Yes, I did." (TT 6/5/02 (A), p 25)

Petitioner's claim that the Internal Affairs investigation report was withheld yet important to his case because "it contained vital statements of an investigation into the crime which could have [shed] light on Petitioner's innocence" is also without merit. Counsel for Petitioner raised this issue at the time of Petitioner's sentencing, at which point the following discussion took place:

> DEFENSE COUNSEL: My client was hoping to get an adjournment, because he had been contacted regarding some people from Internal Affairs. I guess they're investigating the officer that was involved in this. And he was asking that this be put off. He's hoping that they will turn up something that would show, in

|  | fact, his innocence. And he does maintain his innocence. |
|---|---|
| THE COURT: | The officer, whatever investigation is made, was because the officer left the scene and didn't take any further action. That was what it was. He was derelict. It wasn't that he had anything to say favorable; he left. And he should have stayed there. He left. Besides, they checked his gun. They checked his pistol, and it wasn't the pistol that fired the shot. So, that's a phony issue.  [Sentencing Transcript 6/20/02, pp 4-5] |

As the trial judge noted, Officer Herbert was not under scrutiny for any involvement in the victim's death.  To the contrary, his gun was tested and ruled out as having any connection to the weapon that killed the victim.  (TT 6/5/02 (B), pp 67-68, 11-12)  Moreover, Rosalind Murray—a friend of Petitioner's who was in the bar on the night in question—testified at trial that "James" (Officer Herbert), the man who had been arguing with the victim in the bar, was still inside the bar standing in the back by the pool tables near her at the time the shooting was taking place outside the bar.  (TT 6/4/02, pp 81-82)  Petitioner has failed to demonstrate that an Internal Affairs report contained exculpatory information that would have resulted in his acquittal at trial.

Petitioner's claim that the prosecution suppressed forensic lab reports regarding gunshot residue found on his jacket is also without merit.  On the first day of Petitioner's trial, and prior to jury selection, the parties discussed the fact that the prosecutor had called defense counsel to tell him that testing performed on Petitioner's jacket tested positive for gunshot residue.  (TT 6/4/02, pp 4-5)  The prosecutor indicated she was going to fax the report to defense counsel, however, counsel did not have a fax machine.  The trial court then asked defense counsel whether he was aware of the results, and he indicated he was, but he would like to see them.  The prosecutor indicated she would certainly give counsel a copy of the report.  (TT 6/4/02, p 5)

Petitioner suggests that the report was never given to trial counsel, but the trial transcript reveals that after the prosecutor indicated she would provide the report to defense counsel, defense counsel never made a further issue of it nor did he raise any objection to the admission of testimony regarding the test results.  Testimony at trial did clearly establish that the lab report regarding the testing of the jacket was not provided to the prosecution until one week prior to trial.  (TT 6/5/02 (B), pp 70-71)  Even if Petitioner could show that the prosecution never turned the report over to the defense—a point Respondent does not concede—he fails to present any argument to suggest that the report contained exculpatory information that would have led to his acquittal.  Defense counsel thoroughly cross-examined the expert who performed the tests on Petitioner's jacket; Petitioner has failed to establish that the expert's report contained additional information that would have assisted the defense.

The issue regarding criminal background checks of all testifying witnesses was also discussed with the trial court on the first day of trial.  Defense counsel indicated to the trial court that although he had previously filed a discovery order asking for criminal records for all civilian witnesses the prosecution intended to present, he had not received such records.  (TT 6/4/02, p 4)  The prosecutor responded that she did "have a request in to get, before any of the witnesses testify we'll try to have the records, so [defense counsel] can cross-examine them or impeach them . . . " (TT 6/4/02, p 5)  The trial court interrupted the prosecutor and indicated that if there were any such records, "admissibility of records, if they do exist, have to be cleared by the court to determine if they are relevant."  (TT 6/4/02, p 6)  The prosecution and defense then proceeded to select a jury and give their opening statements.  At no point during the trial did defense counsel indicate he had not received the criminal backgrounds from the prosecutor.  Nor does Petitioner now suggest that *any* of the witnesses who testified for the State had criminal

convictions that could have been used against them to impeach their testimony.  Petitioner cannot show that the prosecutor suppressed the criminal records of the witnesses, or that he was prejudiced by any such failure to do so.

Finally, Petitioner's claim that the prosecution suppressed information regarding plea negotiations between the State and jailhouse-informant Murrell is also without merit.  At trial, Murrell was specifically questioned regarding whether he made any deals with the prosecution in exchange for his testimony that Petitioner confessed that he killed the victim.  Murrell indicated that he is the one who contacted the police, and that although he informed the State that Petitioner confessed to the crime, his own trial on criminal sexual conduct and armed robbery charges nonetheless proceeded even though he came forward about Petitioner.  (TT 6/5/02 (B), pp 43-44, 52-53)  When Murrell was asked whether any "promises were made to you in relation to that trial," he indicated there were no promises made.  (TT 6/5/02 (B), 53)  Petitioner has not shown that the prosecutor suppressed any information regarding "plea negotiations" with Murrell because Murrell, in fact, had a trial.  At best, Petitioner's utilization of Murrell's "recantation" affidavit alleges the prosecutor informed Murrell "if I got in there and repeat what I heard, his office would inform the Judge that I cooperated in a major case and that they would not seek a sentence at the high end of the sentencing guidelines."  (Petitioner's Exhibit A, Timothy Murrell Affidavit, paragraph 5)  Even if the prosecutor made that statement to Murrell, there was nothing inappropriate with regard to their discussions.  More importantly, Petitioner cannot show that information regarding sentencing discussions would have made a difference at trial because, as discussed in Argument I (A) herein, the defense attacked Murrell's credibility in any case, and separate from Murrell's testimony, there was strong evidence in any case to convict Petitioner.

C.      Because Petitioner cannot show that trial or appellate counsel were ineffective for addressing the issues contained in Habeas Claims I, II (A), III, and V, he has

<u>failed to demonstrate sufficient cause to excuse the procedural default of these claims.</u>

Because Petitioner has failed to demonstrate that these additional appellate arguments would have been successful, he cannot show that he was prejudiced by appellate counsel's representation, or that appellate counsel's alleged ineffectiveness constitutes sufficient cause to excuse the procedural default of Habeas Claims I, II (A), III, and V.[20]   And where a petitioner fails to establish cause, the court need not determine whether prejudice occurred because both are necessary to excuse a procedural default.[21]   When a petitioner fails to establish cause and prejudice for a procedural default, relief may be granted only if the petitioner can show that refusal to hear his claims will result in a fundamental miscarriage of justice.[22]

The miscarriage of justice exception is a narrow one, seldom to be used.[23]   In order to invoke this narrow exception, a petitioner is required to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.[24]   Such a claim requires a petitioner to support his allegations of constitutional error with <u>new</u> reliable evidence of his actual innocence of the crime for which he is imprisoned.[25]   Petitioner's claim of actual innocence is without merit because the only new evidence he presents are affidavits from a jailhouse informant indicating the informant lied at trial, and an affidavit from a relative of Jamal Jackson who says Jackson told him he actually killed the victim.   In both instances, Petitioner has failed to demonstrate that the prosecution knowingly presented perjured testimony, or that

---

[20] See also *McMeans v Brigano*, 228 F3d 674 (CA 6, 2000) (Where a claim was not a "dead bang winner," appellate counsel's failure to raise it on direct appeal cannot constitute cause to excuse procedural default).

[21] *Murray*, 477 US at 494-495.

[22] *Murray*, 477 US at 495.

[23] *Burkes v Dubois*, 55 F3d 712, 717-718 (CA 1, 1995); *Wyldes v Hundley*, 69 F3d 247, 254 (CA 8, 1995).

[24] *Burkes*, 55 F3d at 717-718.

[25] *Schlup v Delo*, 513 US 298, 324 (1995) (emphasis added).

perjury occurred at all.  Because Petitioner fails to support his allegations of constitutional error with new and reliable evidence of his actual innocence, he cannot obtain relief for his defaulted claims.

**II.**     **Habeas Claim IV—alleging that Petitioner was denied a fair trial when irrelevant prior bad act evidence was admitted against him of due process where his conviction was based on perjured testimony— is procedurally defaulted and noncognizable where it is based on State evidentiary rules.  Moreover, because the Michigan Court of Appeals reasonably determined that the evidence was properly admitted, Petitioner cannot show that trial counsel was ineffective for failing to object to the admission of the prior acts evidence.  Accordingly, Habeas Claim II (B) is without merit.**

Habeas Claim IV alleges that Petitioner was denied a fair trial when prior bad acts evidence was improperly allowed into evidence at trial.  Habeas Claim II (B) asserts that trial counsel was ineffective for failing to object to the introduction of the prior acts evidence, and for failing to request a proper limiting instruction from the jury with respect to the evidence.  Each of these claims were asserted in Petitioner's appeal of right, but denied by the Michigan Court of Appeals.

With respect to Petitioner's claim that evidence regarding his alleged prior acts was improperly admitted, the Michigan Court of Appeals first discussed the law in Michigan with respect to prior acts evidence:

> Use of other acts as evidence of character is excluded, except as allowed by MRE 404(b), to avoid the danger of conviction based on a defendant's history of misconduct. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). To be admissible under MRE 404(b)(1), other acts evidence must satisfy three requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v Knox,* 469 Mich 502, 508; 674 NW2d 366 (2004); *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

> Evidence is not subject to MRE 404(b) analysis merely because it discloses a bad act; bad acts can be relevant as substantive evidence, admissible under MRE 401, without regard to MRE  404. *Knox, supra* at 509; *VanderVliet, supra* at 64. The list of exceptions in MRE 404(b) is nonexclusive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888, on second rem 242 Mich App 656; 620 NW2d 19 (2000). [Michigan Court of Appeals Opinion, Docket No. 245255, p 2]

The Court of Appeals then determined that, under Michigan law and rules of evidence, testimony regarding Petitioner's alleged prior bad acts was properly admitted at trial:

Evidence was presented to the jury that defendant allegedly told a witness, prison inmate Timothy Murrell, about killing Allen. Murrell testified that during this conversation, defendant told Murrell that he engaged in other violent acts in the past, including seventeen other murders and a robbery. This information regarding other crimes was verified through the testimony of a police officer, Miguel Bruce. In addition, Jamal Jackson testified that because defendant had shot at him in the past, he was afraid of defendant. This evidence was offered for a proper purpose. The evidence regarding defendant shooting at Jackson in the past was introduced to bolster the credibility of Jackson's testimony. When it is legally relevant, other acts evidence is admissible as a proper purpose to rebut a charge on implied fabrication. *Starr, supra* at 501-502. Jackson's credibility was called into question during defense counsel's opening statement. The evidence that defendant had previously shot at Jackson was offered to show that Jackson had appropriate reason to fear defendant, and was credible even though his story changed.

Similar to Jackson, Murrell's credibility was also called into question. The defense made it clear in opening statements that Murrell's statement would be challenged. Therefore, it was appropriate for Murrell to give testimony regarding evidence of the robbery and other murders, which could not be found in the preliminary examination transcripts, to bolster the credibility of his testimony. It was also admissible for Bruce to support Murrell's testimony by verifying defendant's involvement in the robbery.

The evidence offered by Jackson, Murrell, and Bruce was likewise relevant. Evidence is relevant if it has any tendency to make the existence of a fact of consequence to the action more probable or less probable than it would be without the evidence. MRE 401; *People v Crawford,* 458 Mich 376, 388; 582 NW2d 785 (1998); *People v Gonzalez,* 256 Mich App 212, 218; 663 NW2d 499 (2003). Evidence is admissible if it is helpful in throwing light on any material point, *Aldrich, supra* at 114, and all facts on which any reasonable presumption of the truth or the falsity of a charge can be founded are admissible, *People v Lewis*, 264 Mich 83, 88; 249 NW 451 (1933). The credibility of witnesses is a material issue and evidence that shows bias or prejudice of a witness is always relevant. *People v Mills*, 450 Mich 61, 72; 537 NW2d 909, mod and rem'd 450 Mich 1212 (1995).

Again, the evidence that defendant had previously shot at Jackson was relevant to show that Jackson had reason to be afraid of defendant. Jackson's credibility had been called into question when Jackson changed his story, and the evidence explained why Jackson should be found to be credible. The evidence

regarding defendant being involved in a robbery and seventeen other murders was also relevant to show that Murrell had information about defendant that went beyond the preliminary examination transcripts, and therefore Murrell was not fabricating the story. This evidence was brought forth only after defense counsel discussed it in his opening statement. Bruce's testimony verifying defendant's involvement in the robbery also helped to bolster Murrell's credibility. Therefore, the testimony from Jackson, Murrell, and Bruce was relevant to the credibility of the witnesses, which had been called into question by the defense.

Further, the testimony offered by Jackson, Murrell, and Bruce had probative value that was not outweighed by its unfair prejudicial effect. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *Sabin*, *supra* at 58. "Unfair prejudice" does not mean "damaging." *Mills*, *supra* at 75. Any relevant evidence will be damaging to some extent. Rather, unfair prejudice exists when there is a tendency that the evidence will be given undue or preemptive weight by the jury, or when it would be inequitable to allow use of the evidence. *Lewis*, *supra* at 83; *Mills*, *supra* at 75-76; *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002).

Here, the evidence presented regarding defendant shooting at Jackson gave proof to the statement that Jackson was afraid of defendant, which reflected directly on Jackson's credibility. The evidence regarding the robbery and the other murders was the most effective and efficient way that Murrell could prove his credibility, which the defense had called into question. Because the evidence brought forth in the testimony of Jackson, Murrell, and Bruce was offered for a proper purpose, was relevant, and its prejudicial effect was outweighed by its probative value, it was within the court's discretion to find the evidence was admissible under MRE 404(b)(1). [Michigan Court of Appeals Opinion, Docket No. 245255, pp 2-3]

With regard to Petitioner's claim that trial counsel was ineffective for failing to object to the introduction of the prior acts evidence, the Michigan Court of Appeals held that counsel was not required to object to evidence that was properly admitted:

Defendant also argues that defense counsel was ineffective for failing to object to the other acts evidence or request a limiting instruction.

To fully preserve this issue for review, a defendant should move for a new trial or evidentiary hearing. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant did not move for a new trial or a *Ginther*[1] hearing, therefore our review is limited to mistakes apparent on the record. *Id*. at 658-659.

To establish a claim of ineffective assistance of counsel, a defendant must
show: (1) that counsel's performance was below an objective standard of
reasonableness under prevailing professional norms; (2) that there is a reasonable
probability that, but for counsel's error, the result of the proceedings would have
been different, *Bell v Cone*, 535 US 685, 695; 122 S Ct 1843; 152 L Ed 2d 914
(2002); *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000), and
(3) that the resultant proceedings were fundamentally unfair or unreliable, *People
v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant claims that counsel was ineffective by failing to object to the
other acts evidence. As demonstrated*, supra*, the other acts evidence was
admissible. Defense counsel need not register a meritless objection to act
effectively. *Hawkins, supra* at 457, citing *People v Snider*, 239 Mich App 393,
425; 608 NW2d 502 (2000). Therefore, defense counsel did not err in failing to
object to properly admitted evidence. [Michigan Court of Appeals Opinion,
Docket No. 245255, pp 4-5]

With regard to trial counsel's failure to request a limiting instruction, the Michigan Court

of Appeals held that the decision on counsel's part was a matter of reasonable trial strategy:

If other acts, crimes, or wrongs evidence is admitted into evidence, on
request, the trial court may provide a limiting instruction**.** *VanderVliet, supra* at
75. Defendant has not overcome the strong presumption that his trial counsel's
failure to request a limiting instruction was sound trial strategy. It is reasonable
that defense counsel made a tactical decision not to repeatedly highlight
defendant's other acts for the jury, considering the fact that the testimonial
evidence regarding the evidence was not highlighted in the testimony, but rather
used to bolster the credibility of the witnesses. We do not substitute our judgment
for defense counsel's with regard to decisions of trial strategy or assess defense
counsel's performance with the benefit of hindsight. *People v Rice (On Remand),*
235 Mich App 429, 445; 597 NW2d 843 (1999). Failure of trial strategy does not
necessitate a conclusion that the strategy constituted ineffective assistance of
counsel. *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996).
Defendant has failed to overcome the presumption that counsel rendered effective
assistance. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).
[Michigan Court of Appeals Opinion, Docket No. 245255, p 5]

The appraisal of the probative and prejudicial value of evidence is entrusted to the sound

discretion of the trial judge, and that discretion is not reviewable in a habeas proceeding.[26]

"Errors by a State court in the admission of evidence are not cognizable in habeas corpus

---

[26] *Oliphant v Koehler*, 594 F2d 547, 555 (CA 6, 1978).

proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."[27]  This Court may only grant habeas relief to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States."[28]  Therefore, habeas relief may not be based upon perceived errors of State law.[29]  The role of a habeas court is not to pass upon the correctness of the trial court's evidentiary rulings, but rather is limited to determining whether the rulings denied Petitioner a constitutionally guaranteed right.[30]

Petitioner is not entitled to relief by showing that the trial court violated State evidentiary rules, or that in a federal court trial, the evidence would have been inadmissible under the federal rules.  In order to establish a denial of due process by reason of trial error, Petitioner must prove that the error was "so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford Petitioner the fundamental fairness which is the essence of due process."[31]  Petitioner has failed to show that testimony concerning Petitioner having previously shot at Jackson and Petitioner's having informed Murrell that he had previously engaged in other murders and a robbery was admitted in error, or that any error was so grave as to have amounted to a violation of his constitutional rights.

At trial, Jamal Jackson was questioned as to why he initially failed to tell the police that he saw Petitioner holding a gun just after the shots were fired at the scene.  Jackson testified that Petitioner told him that night that if the police questioned him, he was to shut up about it. Jackson testified that he felt threatened by Petitioner not to talk to the police, and that the threat

---

[27] *Kelley v Withrow*, 25 F3d 363, 370 (CA 6), *cert denied*, 115 S Ct 674 (1994).
[28] 18 USC § 2241(c)(3); 28 USC § 2254(a).
[29] *Estelle v McGuire*, 502 US 62 (1991); *Lewis v Jeffers*, 497 US 764, 780 (1990); *Smith v Phillips*, 455 US 209, 221 (1982).  Here, Petitioner's argument is based on MRE 404(b).
[30] *Moore v Tate*, 882 F2d 1107, 1109 (CA 6, 1989).
[31] *Maggitt v Wyrick*, 533 F2d 383, 385 (CA 8, 1976).

felt genuine given that Petitioner had shot at him in the past.  Jackson's credibility had been called into question by the defense during opening statements and throughout the trial because he changed his story.  Jackson's testimony that Petitioner previously shot at him was relevant to show that even though his story changed, he was nonetheless a credible witness who was in fear of Petitioner.

Similarly, Murrell's jailhouse-informant testimony was called into question by the defense at trial.  Defense counsel labeled Murrell a "jailhouse snitch" and implied that Murrell obtained his information not from Petitioner, but from reading Petitioner's preliminary examination transcript.  As a result of this approach, information Murrell had about Petitioner that could *not* be found in the transcript became relevant in order to undercut the claim that Murrell was fabricating his testimony.  Because the transcript contained no information regarding Petitioner having committed prior violent acts, Murrell's testimony that Petitioner told him he committed violent acts in the past, including murders and a robbery was relevant to bolster the credibility of Murrell's testimony. The fact that Murrell had information about Petitioner beyond what was contained in the exam transcript was relevant to undercut the defense's claim that Murrell was manufacturing his testimony at trial.  Murrell testified on cross-examination that Petitioner told him about robbing a lady whose husband was killed by the guards at Lord & Taylor, and that Petitioner told him that robbery netted him $50,000 in cash, mink coats, and some other items.  (TT 6/5/02 (B), pp 47-48)  Investigator Miguel Bruce testified at Petitioner's trial that he was able to verify some of the things that Murrell had told him about Petitioner's prior incidents, as well as verifying some of the information about the armed robbery.  (TT 6/5/02 (B), pp 76-77)

Because the evidence in question was properly admitted, Petitioner cannot show trial error, or prove that any alleged error was "so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford Petitioner the fundamental fairness which is the essence of due process."[32]   Petitioner has failed to show that his constitutional rights were violated at trial.   And even if he could show a violation, he cannot demonstrate prejudice given the overwhelming evidence presented against him, as discussed in Argument I herein.

With respect to Habeas Claim II (B), Petitioner has failed to show that trial counsel was ineffective for failing to object to the other acts evidence.   Counsel was not required to take measures that, ultimately, would have been pointless.[33]   And because the prior acts evidence was properly admitted, any objection by trial counsel would indeed have been pointless.   To the extent Habeas Claim II (B) also alleges that trial counsel was ineffective for failing to request a limiting instruction for the jury once the prior acts evidence was admitted, this claim is without merit as well.   A petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.[34]   Here, as the Michigan Court of Appeals held, it is reasonable that trial counsel made a tactical decision not to repeatedly highlight Petitioner's other acts for the jury, considering the fact that the testimonial evidence regarding his prior acts was not highlighted in the overall testimony, but rather used to bolster the credibility of the two witnesses in question.   Trial counsel may well have decided that the brief references to other alleged bad acts by Petitioner were best left within Jackson's and Murrell's testimony rather than

---

[32] *Maggitt*, 533 F2d at 385.
[33] *Ludwig v United States*, 162 F3d 456, 459 (CA 6, 1998).
[34] *Strickland*, 466 US at 689.

having the trial judge draw attention back to it by providing the jury a limiting instruction.  This

approach was not unsound.

## Conclusion

For the reasons stated above, the petition should be denied.

Respectfully submitted,

Michael A. Cox
Attorney General

s/Laura A. Cook

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48913
(517) 373-4875
CookL@michigan.gov
(P44718)

Dated: January 9, 2009

2006014313A/ Ervin Answer

**Certificate of Service**

I hereby certify that on January 9, 2009, I electronically filed the foregoing papers with

the Clerk of the Court using the ECF system which will send notification of such filing to the

following:

    HONORABLE LAWRENCE P. ZATKOFF
    MAGISTRATE JUDGE VIRGINIA M. MORGAN
and I hereby certify that Meagan R. Touhey has mailed by United States Postal Service the

papers to the following non-ECF participant

    FREDDIE ERVIN #241696
    MACOMB CORRECTIONAL FACILITY
    24625 26 MILE ROAD
    NEW HAVEN MI 48048


                          MICHAEL A. COX
                          Attorney General

                          s/ Laura A. Cook

                          Assistant Attorney General
                          Appellate Division
                          P.O. Box 30217
                          Lansing, MI  48909
                          (517) 373-4875
                          cookl@michigan.gov
                          P44718