## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FREDDIE ERVIN, # 241696,

                Petitioner,

v.                                Case Number: 06-CV-10004
                                Honorable Lawrence P. Zatkoff

HUGH WOLFENBARGER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

## I. INTRODUCTION

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Michigan prisoner Freddie Ervin ("Petitioner"), currently incarcerated at the Saginaw Correctional Facility[1] in Freeland, Michigan, filed this *pro se* habeas petition challenging his convictions for first-degree murder, felony firearm, and felon in possession of a firearm, following a jury trial in the Wayne County Circuit Court on June 6, 2002. On June 20, 2002, the trial judge sentenced Petitioner to concurrent terms of life in prison for the murder conviction and forty-

---

[1]Petitioner was incarcerated at the Macomb Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Saginaw Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

to-sixty months in prison for the felon-in-possession conviction, both of which are to be served consecutively to Michigan's mandatory two-year prison term for the felony-firearm conviction.  For the reasons discussed below, the Court will deny the petition.  The Court also will decline to issue Petitioner a certificate of appealability.

## II.  BACKGROUND FACTS

Petitioner's troubles in this case arise because of a shooting incident that occurred at a bar in Detroit, Michigan, on January 13, 2002, resulting in the death of Thomas Rodell Allen.  The prosecution presented thirteen witnesses and numerous exhibits.  The theory was that, on the night in question, an argument broke out inside the bar between Allen and a man named James, later identified as off-duty Detroit Police Officer James Herbert.  Several persons, including Petitioner, assisted the bar owner in escorting Allen out of the bar.  Petitioner then left.  Sometime later, Allen was shot.

The defense presented four witnesses.  The theory was that Petitioner was not the shooter.  Petitioner did not testify.

Trial began on June 4, 2002, and concluded on June 6, 2002.  Testimony revealed the following pertinent facts.

Petitioner's friend, Rosalind Murray, testified that she was at the bar with Petitioner, Jamal Jackson, and Allen, on the night in question.  She said someone named James and Allen got into an argument, which resulted in Allen being knocked down to the floor.  Six guys, including Petitioner, picked him up and escorted him out of the bar.  Jackson and Petitioner then left the bar with Allen and did not return.  Murray said she stayed at the bar.

2

She said she asked Petitioner for a ride home that night because her ride left before the argument occurred.

Murray further testified that she heard a woman screaming, "Don't you all go out there; they shooting." Trial Tr. vol. I, 80 June 4, 2002. She then saw Allen beating on the door of the bar, asking to be let back in. When the bar owner refused, he left.

Murray denied hearing gunshots but admitted moving to the back of the bar when she heard the woman screaming. She testified that a lady named Kim and James, one of the individuals who argued with Allen that night, were at the back of the bar with her. About ten minutes after the incident, Murray said Petitioner knocked on the door of the bar and told the owner to let her out. She then left.

Murray said, after she got into the car, Petitioner said to her, "Do you see that guy over there on the ground?" Trial Tr. vol. I, 83 June 4, 2002. Petitioner was directing her attention to Allen, who was lying on the ground. She said Jackson got out of the car and went over to him. When Jackson returned to the car, he told them that Allen was still breathing. She tried to get out of the car to help Allen, but Petitioner told her not to, stating, "You don't need to be a witness to a murder." Trial Tr. vol. I, 91 June 4, 2002.

Karen Sheppard, a waitress at the bar, testified that she observed an argument in the bar that night between James Herbert and Allen. She said Allen was removed from the bar by four or five individuals. She called 911 in response to what she thought was Allen trying to break into the bar. Sheppard testified that she then heard gunshots. After she heard the gunshots, she called 911 again.

3

Willie Sellers testified that he also was at the bar on the night of the incident. He said that he saw an argument take place between Allen and another individual and witnessed Allen being removed from the bar by the bar owner. He said he was outside with Petitioner and others when Allen was attempting to get back into the bar. Sellers testified that he and a friend then walked around the side of the building because they thought Allen was calling the police. He said Allen was alone with Petitioner and another guy. When he heard gunshots, he ran behind the bar.

James Herbert, an off-duty Detroit Police Officer, was at the bar on the night in question. He testified that he knew Petitioner and Allen. He said Allen was arguing with everyone that night. The bar owner attempted to intervene and told them to leave. Officer Herbert testified that he too asked Allen to leave. He said he pushed Allen toward the door. When Allen appeared to reach for a gun, he attempted to reach for his. The owner of the bar then grabbed Allen and the manager grabbed him and they separated them. The bar owner then removed Allen from the bar. Shortly afterward, Officer Herbert said he heard Allen trying to get back into the bar. He also heard someone yelling to call the police. He left the bar about ten minutes after the encounter. After he got into his car and pulled around the corner, he saw a person lying on the ground and another person standing by a running car. Someone told him it was Allen lying on the ground. Officer Herbert then drove away.

Jamal Jackson also testified. He said after they left the bar, Petitioner told him to start up the truck and keep it running. He said he walked to the truck alone. He also heard Allen beating on the bar door. As he started the truck, Jackson said he heard gunshots. Petitioner

4

then suddenly appeared at the door of the truck and was trying to enter.  He was breathing hard and had a gun in his hand.  He told him to drive back to the bar because he had to pick up a friend.  Jackson said they picked up Murray and drove off.

Jackson further testified that Petitioner asked him to drive by where Allen was lying on the ground.  He said Petitioner told him to get out of the truck.  He did.  When he returned, he told Petitioner that Allen was still alive.  Jackson said Petitioner told him not to talk to the police about the incident.

Hayden Dannug, a forensic chemist with the Detroit Police Department, tested Petitioner's jacket for gunshot residue.  He testified that there was residue on the right sleeve cuff, right outer pocket, and the left breast pocket.

Timothy Murrell, an inmate in the holding cell with Petitioner, testified that Petitioner told him that he was wearing a black leather jacket when the victim was shot.  Murrell also said Petitioner told him he gave the gun to his wife and that it was in the house.  Murrell said Petitioner told him he was going to tell his sister to tell Jackson not to show up for trial.

The jury convicted Petitioner as charged.

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of Appeals, raising the following three claims: (1) he was denied due process because the trial court's instructions to the jury regarding first-degree and second-degree murder were erroneous, (2) he was denied a fair trial because of the admission of other acts evidence, and (3) trial counsel was ineffective for failing to seek the suppression of the other acts evidence. The Court of Appeals affirmed Petitioner's convictions and sentences.  *People v. Ervin*, No.

5

245255, 2004 WL 1057769 (Mich.Ct.App. May 11, 2004).

Subsequently, Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same three claims. The Supreme Court denied his application. *People v. Ervin*, 690 N.W.2d 107 (Mich. 2004) (Table).

On January 3, 2006, Petitioner filed this habeas petition, in which he raised three claims: the jury instructions were improper regarding first-degree and second-degree murder, the trial court improperly admitted other acts evidence, and trial counsel was ineffective for failing to object to the admission of the other acts evidence and for failing to request an appropriate jury instruction regarding such. On June 9, 2006, Petitioner filed a motion to hold his case in abeyance on the basis that he discovered two additional unexhausted claims: trial counsel was ineffective for failing to file a motion to compel the prosecution to produce certain discovery material, and witness Timothy Murrell perjured himself at trial. The Court granted Petitioner's motion. *Ervin v. Wolfenbarger*, No. 06-CV-10004-DT, 2006 WL 1791333 (E.D. Mich. June 27, 2006).

On August 18, 2006, Petitioner filed a motion for relief from judgment with the state trial court, alleging that trial counsel was ineffective for going to trial without complete discovery materials, appellate counsel was ineffective for failing to assert that claim on appeal, and he was entitled to a new trial because he was actually innocent and his conviction was obtained through the use of perjured testimony. On February 21, 2007, the trial court denied the motion. *People v. Ervin*, No. 02-02260-01 (Third Judicial Circuit Court, Feb. 21, 2007). The Court of Appeals denied his delayed application for leave to appeal for failure

6

to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *People v. Ervin*, No. 277787 (Mich.Ct.App. Oct. 23, 2007). On May 27, 2008, the Supreme Court denied his application for the same reason. *People v. Ervin*, 748 N.W.2d 809 (Mich. 2008) (Table).

In conformance with the Court's June 27, 2006 order, Petitioner filed a timely request to reopen his case and to amend his habeas petition, which the Court granted. *People v. Ervin*, No. 06-CV-10004 (E.D. Mich. July 28, 2008). On January 9 and 28, 2009, respectively, Respondent filed his response and the necessary Rule 5 materials.

In his amended habeas petition, Petitioner raises the following claims: (1) he is actually innocent of the crimes charged, and his conviction must be overturned because it was based on perjured testimony, and thus, there was insufficient evidence to convict him, (2) trial counsel was ineffective for going to trial without complete discovery, for failing to file a motion compelling such discovery, for failing to seek suppression of the other acts evidence, and for failing to request a limiting instruction regarding the admission of the other acts evidence, (3) the prosecutor suppressed favorable discovery material, (4) the admission of the other acts evidence was improper, and (5) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to obtain discovery material. Because Petitioner complied with the Court's order, his case is now ripe for consideration.

### III.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing habeas petitions:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts are therefore bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). This Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief

8

under the "unreasonable application" clause when "a state-court decision unreasonably

applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409.

The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable.

> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law . . . .   Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that the relevant
> state-court decision applied clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409-11.

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786 (2011) (citations

omitted), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal
> habeas relief so long as "fairminded jurists could disagree" on the correctness
> of the state court's decision.  And as this Court has explained, "[E]valuating
> whether a rule application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations."   "[I]t is not an
> unreasonable application of clearly established Federal law for a state court to
> decline to apply a specific legal rule that has not been squarely established by
> this Court."

With those standards in mind, the Court proceeds to address Petitioner's claims.

## IV.  DISCUSSION

### A.  Procedural Default

As an initial matter, Respondent argues that Petitioner's innocence claim, ineffective-

assistance-of-counsel claim regarding discovery, suppression-of-discovery claim, and ineffective-assistance-of-appellate counsel claim are barred by the procedural-default rule. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Here, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's procedurally-defaulted claims.

## B. Petitioner's Claims

### 1. Claims Relating to Newly-Discovered Evidence

The bulk of Petitioner's habeas claims relate to newly-discovered evidence which he contends establishes that he is innocent of the crimes. Specifically, Petitioner contends that two witness, Timothy Murrell and Jamal Jackson, perjured themselves at trial. In support of his claim, Petitioner presents an affidavit from Murrell who avers that he lied at trial, and an affidavit from one of Jackson's cousins, Dirlain D. Moore, who alleges that Jackson told him he was the one who killed Allen. Based on that evidence, Petitioner argues that he is entitled to habeas relief because he is actually innocent and his convictions were based on false and perjured testimony.

### a. Reliability of Recantation Testimony

Petitioner presented this claim to the state court in his motion for relief from

10

judgment. The trial court found that the new evidence was not sufficient to support granting Petitioner a new trial because Murrell's testimony was unreliable and that "[Murrell did] not state that [Petitioner] is innocent of the crimes charged but instead [said] that he never would have testified if he thought [Petitioner] would get life in prison." *Ervin*, No. 02-002260-01, at \*4. The trial court also concluded that, even if Murrell committed perjury, the testimony of the remaining witnesses was sufficient to support the jury's verdict.

This Court finds that the trial court's determination that Murrell's recantation testimony was unreliable was not an unreasonable determination of the facts.

"[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e) (1). The trial court is in the best position to judge the credibility of witnesses and "determinations of credibility and demeanor lie 'peculiarly within a trial judge's province.'" *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (citations omitted). Section 2254(d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). In addition, affidavit or deposition testimony by witnesses recanting their trial testimony is viewed with extreme suspicion. *See McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) ("[Affidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion.")); *Williams v. Coyle*, 260 F.3d 684, 708 (6th Cir. 2001) (citing *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir.1991)).

11

Regarding Murrell's affidavit, the state trial court found:

> Mr. Murrell states in his affidavit that he was facing sentencing on Criminal Sexual Conduct and Home Invasion and that he was promised leniency at sentencing by the Prosecutor if he "got in there and repeated what he'd heard."

> Mr. Murrell then states that he read about the killing of Mr. Allen in Mr. Ervin's transcripts. This statement is contrary to his first statement that he was told to say "what he'd heard" not "what he'd read." The witness does not state that Defendant Ervin is innocent of the crimes charged but instead says that he never would have testified if he thought the defendant would get life in prison.

> Defendant also claims that he is "actually innocent" of the crime charged and that fact is supported by the recanting affidavit but he is sadly mistaken. Even if this court were to find that Mr. Murrell committed perjury, the testimony of the remaining witnesses presented at trial was sufficient to support the jury's verdict of guilty beyond a reasonable doubt.

*Ervin*, No. 02-002260-01, at *4.

This Court's independent review of the record and the affidavit support the trial court's determination.

### b. Alleged Perjured Testimony

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving

12

that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. Recantation of testimony alone is insufficient to establish a due process violation. To prevail on a claim that a conviction was obtained through the use of perjured testimony, Petitioner must show that the statements were actually false, that the statements were material, and that the prosecutor knew (or should have known) that the statements were false. *Coe*, 161 F.3d at 343.

Although the alleged perjured testimony was material, Petitioner has not made a showing that the other elements are satisfied. First, he has not demonstrated that Murrell's trial testimony was actually false. As discussed above, Murrell's recantation testimony is unreliable. Although Murrell likely either committed perjury at Petitioner's trial or in his affidavit, Petitioner has not established that the perjury occurred at his trial. To the contrary, the trial court's determination that Murrell was not telling the truth when he recanted in his affidavit is supported by the weight of the evidence.

Second, Petitioner has not alleged any facts to establish the prosecution knowingly presented false testimony. The prosecution had reason to believe that Murrell testified truthfully since his testimony was consistent with the other evidence at trial. Petitioner has failed to establish that the prosecution relied upon perjured testimony or knowingly presented false testimony.

### c. Actual Innocence

Petitioner also asserts that he is entitled to relief because he is actually innocent. To the extent that he does so, he fails to state a claim upon which habeas relief may be granted. "Claims of actual innocence based on newly discovered evidence have never been held to

13

state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera*—whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 F.App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *see also Sitto v. Lafler*, No. 06-2203, 2008 WL 2224862, at *1 (6th Cir. May 28, 2008) (same); *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005) (same). Thus, Petitioner's claim that he is actually innocent and has newly-discovered evidence to prove his innocence does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F.Supp.2d 582, 606 (E.D. Mich. 2001). He is therefore not entitled to relief on such a basis.

14

### 2. Claims Related to Discovery

In his third habeas claim, Petitioner alleges that the prosecutor suppressed favorable discovery material and thereby deprived him of his right to due process. In claim two, he alleges that trial counsel was ineffective for failing to obtain full discovery, and in claim five, Petitioner argues that appellate counsel was ineffective for failing to assert the above-stated claims on direct review.

### a. Suppression of Evidence

Petitioner contends that the prosecutor suppressed evidence that was favorable to him. Specifically, Petitioner alleges that the following six items were suppressed: (1) Jackson's first statement to the police, (2) Police Officer James Herbert's first statement to the police, (3) the lab reports of alleged gunshot residue on his jacket, (4) the criminal convictions and backgrounds for all testifying witnesses, (5) plea negotiations between the prosecution and Murrell, and (6) an internal investigation report regarding statements made by off-duty Police Officer Herbert.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, Petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to Petitioner

15

and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of Petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler*, 527 U.S. at 281-82 (same). Petitioner bears the burden of establishing each of those elements. *See Carter*, 218 F.3d at 601.

In regard to Jackson's first statement to the police—where he said he saw two men standing near Allen's body after the shooting, and made no mention of Petitioner having had a gun after the shooting—the defense was aware of that statement prior to trial. At Petitioner's preliminary exam, defense counsel extensively questioned him about the fact that he had been arrested and questioned by the police. And, at trial, Jackson testified and was cross-examined regarding those issues. The Court finds that Petitioner has failed to show that the prosecution suppressed Jackson's first statement to police where the defense was clearly aware of the contents of that statement.

To the extent Petitioner also argues that the prosecution suppressed information regarding the two men Jackson observed near the victim's body, he has failed to show that the prosecution had such information. Petitioner's arguments amount to mere accusation and speculation, as he only suggests that the prosecutor suppressed "the names of the two men Jackson claimed in his first statement that he alleged to have seen standing over the police." Petitioner does not allege, nor can he show, that Jackson knew the names of the two men, or that the police or prosecution were ever able to identify them.

In regard to off-duty Officer Herbert's first statement to police—where he said that a man meeting Jackson's description was standing near the victim—and the Internal Affairs

16

report regarding his conduct on the night of Allen's death, Petitioner again fails to show that the prosecution withheld exculpatory evidence. Petitioner's claim is without merit where such information was clearly known to the defense, and Officer Herbert was questioned extensively at trial. Moreover, defense counsel was clearly aware there had been two statements to the police because during Officer Herbert's testimony, counsel referenced a "second statement" and actually showed him a statement he had made to police. Trial Tr. vol. II, 24-27 June 5, 2002. Defense counsel specifically stated to Officer Herbert, "you gave several statements to the police; is that correct?" To which Herbert responded, "Yes, I did." Trial Tr. vol. II , 25 June 5, 2002.

Petitioner's claim that the Internal Affairs investigation report was withheld because "it contained vital statements of an investigation into the crime which could have [shed] light on Petitioner's innocence" is also without merit. Defense counsel raised that issue at the time of Petitioner's sentencing:

DEFENSE COUNSEL:

* * *

My client was hoping to get an adjournment, because he had been contacted regarding some people from Internal Affairs. I guess they're investigating the officer that was involved in this. And he was asking that this be put off. He's hoping that they will turn up something that would show, in fact, his innocence. And he does maintain his innocence.

THE COURT: The officer, whatever investigation is made, was because the officer left the scene and didn't take [a]ny further action. That was what it was. He was derelict. It wasn't that he had anything to say favorable; he left. And he should have stayed there. He left.
Besides, they checked his gun. They checked his pistol, and it wasn't

17

the pistol that fired the shot.  So, that's a phony issue.

Sentencing Hr'g Tr. 4-5, June 20, 2002.

As the trial judge noted, Officer Herbert was not under scrutiny for any involvement in Allen's death.  To the contrary, his gun was tested and ruled out as having any connection to the weapon that killed Allen.  Moreover, Murray testified at trial that "James" (Officer Herbert), the man who had been arguing with Allen at the bar on the night in question, was still inside the bar standing in the back by the pool tables near her at the time the shooting was taking place outside the bar.

Against that backdrop, the Court finds that Petitioner has failed to demonstrate that an Internal Affairs report contained exculpatory information that would have resulted in his acquittal at trial.

Petitioner's claim that the prosecution suppressed forensic lab reports regarding gunshot residue found on his jacket is also without merit.  On the first day of Petitioner's trial, and prior to jury selection, the parties discussed the fact that the prosecutor had called defense counsel to tell him that testing performed on Petitioner's jacket tested positive for gunshot residue.  The prosecutor indicated she was going to fax the report to defense counsel, however, counsel did not have a fax machine.  The trial court then asked defense counsel whether he was aware of the results, and he indicated he was, but he would like to see them. The prosecutor indicated she would certainly give counsel a copy of the report.  Trial Tr. vol. I, 3-5 June 4, 2002.

Petitioner suggests that the report was never given to trial counsel, but the trial

18

transcript reveals that after the prosecutor indicated she would provide the report to defense counsel, defense counsel never made a further issue of it nor did he raise any objection to the admission of testimony regarding the test results.  Testimony at trial did clearly establish that the lab report regarding the testing of the jacket was not provided to the prosecution until one week prior to trial.  Even if Petitioner could show that the prosecution never turned the report over, he fails to present any argument to suggest that the report contained exculpatory information that would have led to his acquittal.  Rather, at trial, defense counsel thoroughly cross-examined Forensic Chemist Dannug, who performed the tests on Petitioner's jacket.  Thus, Petitioner has failed to establish that the report contained additional information that would have assisted his defense.

The issue regarding criminal background checks of all testifying witnesses was also discussed with the trial court on the first day of trial.  Defense counsel indicated to the trial court that although he had previously filed a discovery order asking for criminal records for all civilian witnesses the prosecution intended to present, he had not received such records. The prosecutor responded that she did "have a request in to get, before any of the witnesses testify we'll try to have the records, so [defense counsel] can cross-examine them or impeach them . . ."  Trial Tr. vol. I, 5 June 4, 2002.  The trial court interrupted the prosecutor and indicated that if there were any such records, "admissibility of records, if they do exist, have to be cleared by the Court to determine if they are relevant."  *Id.* at 6.  The prosecution and defense then proceeded to select a jury and give their opening statements.  At no point during the trial did defense counsel indicate he had not received the criminal backgrounds from the

19

prosecutor.  Nor does Petitioner now suggest that any of the witnesses who testified for the State had criminal convictions that could have been used against them to impeach their testimony.  Petitioner cannot show that the prosecutor suppressed the criminal records of the witnesses, or that he was prejudiced by such.

Finally, Petitioner's claim that the prosecution suppressed information regarding plea negotiations between the State and jailhouse-informant Murrell is also without merit.  At trial, Murrell was specifically questioned regarding whether he made any deals with the prosecution in exchange for his testimony that Petitioner confessed to killing the victim.  Murrell indicated that he was the one who contacted the police, and that although he informed the State that Petitioner confessed to the crime, his own trial on criminal sexual conduct and armed robbery charges nonetheless proceeded even though he came forward about Petitioner.  Moreover, when Murrell was asked whether any promises were made to him, he indicated there were no promises made.

Furthermore, Petitioner cannot establish that the prosecutor suppressed any information regarding plea negotiations with Murrell because Murrell, in fact, had a trial.  At best, Petitioner's utilization of Murrell's recantation affidavit alleges the prosecutor informed Murrell that "[i]f [he] got in there and repeat what [he] heard, [the prosecutor's] office would inform the Judge that [he] cooperated in a major case and that they would not seek a sentence at the high end of the sentencing guidelines."  Affidavit of Timothy Murrell, ¶ 5.  Even if the prosecutor made that statement to Murrell, there was nothing inappropriate with regard to their discussions.  More importantly, Petitioner cannot show that information

20

regarding sentencing discussions would have made a difference at trial because the defense attacked Murrell's credibility, and, separate from Murrell's testimony, there was sufficient evidence presented to support Petitioner's convictions.  Thus, he is not entitled to habeas relief regarding these claims.

### b.  Ineffective Assistance of Counsel Regarding Discovery Claims

In habeas claim two, Petitioner asserts that trial counsel was ineffective for failing to investigate and obtain discovery material, and, in habeas claim five, he alleges that appellate counsel also was ineffective for failing to assert those claims in his direct appeal.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Strickland*, 466 U.S. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

21

professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Id.* at 686.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted).

That same test applies to claims of ineffective assistance of appellate counsel.  *Smith v. Jago*, 888 F.2d 399, 405 n. 1 (6th Cir. 1989).  It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).

In this case, the state trial court denied relief on Petitioner's ineffective-assistance-of-counsel claims in his motion for relief from judgment, finding that Petitioner could not establish that appellate counsel was ineffective because the foregoing claim of ineffective assistance of trial counsel in regard to his discovery claims lacked merit. *Ervin*, No. 02-002260-01, at *2-3. The Court finds that decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has failed to show that, by omitting the ineffective assistance of trial counsel claim presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Moreover, given that the underlying discovery claims lack merit, *see discussion*, *supra*, Petitioner cannot establish that either counsel was ineffective under

23

*Strickland*.  Habeas relief is not warranted.

### 3.  Claims Related to Other Acts Evidence

In his fourth habeas claim, Petitioner alleges that he was denied a fair trial when prior bad acts evidence was improperly admitted at trial.  In his second habeas claim, he also asserts that trial counsel was ineffective for failing to object to the introduction of that evidence and for failing to request a limiting instruction with respect to the evidence.

Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S.Ct. 668 (1990).  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513; *see also Adams v. Smith*, 280 F.Supp.2d 704, 716 (E.D. Mich. 2003).  Petitioner's claim that the state trial court violated the Michigan Rules of Evidence

24

by admitting the other acts evidence is not cognizable on habeas review.  Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue.

Even if Petitioner's claim was a cognizable claim, he is not entitled to habeas relief. He has not shown that the disputed evidence rendered his trial fundamentally unfair.  As explained by the Michigan Court of Appeals in reviewing this issue under state law, the other acts evidence admitted was relevant and admissible.  *See Ervin*, 2004 WL 1057769, at *1-4. Such testimony was properly admitted under state law and the prosecution did not make an improper character or propensity argument based upon the evidence.

This Court finds that Petitioner has not shown that the admission of the other acts evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

With regard to Petitioner's claim that trial counsel was ineffective for failing to object to the introduction of the other acts evidence and for failing to request a limiting instruction, Petitioner cannot establish that trial counsel was ineffective.  Defense counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996).  Moreover, Petitioner has failed to establish that he was prejudiced by trial counsel's conduct, given the overwhelming evidence against him.

The Court concludes that Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on this claim.

Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing issues on direct appeal in the state courts.  As

25

explained *supra*, the claims lack merit and Petitioner has failed to establish that appellate counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted.

### C.  Court Declines to Issue Petitioner a Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a [COA] when it enters a final order adverse to the applicant . . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11, Rules Governing Section 2255 Proceedings.

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Courts must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c)(3); Fed.R.App. P. 22(b).  To receive a COA "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

For the reasons stated in its opinion and order, the Court concludes that reasonable jurists would not find its assessment of Petitioner's  claims debatable or wrong.  The Court therefore declines to issue Petitioner a COA.

## V.  CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a COA.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  July 19, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 19, 2011.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

27